CHICAGO TITLE AND TRUST COMPANY, Trustee, Plaintiff-Appellee, v. BASKIN CLOTHING COMPANY, Defendant-Appellant.

First District (6th Division)   No. 1—89—1766

Opinion filed September 13, 1991.

Grace Allen Newton and Carey M. Stein, both of Chicago, for appellant.

Gottlieb & Schwartz, of Chicago (Loren J. Mallon and Gini S. Marziani, of counsel), for appellee.

JUSTICE LaPORTA delivered the opinion of the court:

In a declaratory judgment suit brought by the fee owner land trust against its commercial tenant, Baskin, the plaintiff sought a declaration by the court finding that Baskin is obligated under its written lease with plaintiff and that Baskin be ordered to comply with all lease terms and obligations. The complaint also sought damages in the amount of $36,694.35 plus liquidated damages, interest, attorney fees and other sums as proven. The court granted plaintiff's motion for summary judgment and following prove up awarded plaintiff damages of $160,176.60 and attorney fees pursuant to the lease. Defendant appeals the court's orders of May 4, 1989, which entered summary judgment in favor of plaintiff, the order of June 20, 1989, for $160,176.60

following prove up of damages and the order of July 7, 1989, for attorney fees.

On appeal defendant raises seven issues: (1) whether an award of summary judgment to plaintiff was improper in light of the existence of genuine issues of material fact; (2) whether variations in the lease agreement negotiated between plaintiff-lessor and Charles A. Stevens serve to discharge Baskin; (3) whether Baskin can be held liable after plaintiff-lessor exercised its option to terminate the lease by giving advance written notice to Baskin and Stevens that the lease was rejected; (4) in the alternative whether Baskin can be obligated under the lease after January 31, 1989, in light of plaintiff's advance notice that the lease would terminate on that date; (5) whether the court committed reversible error in ruling that plaintiff's representations that the lease was terminated were irrelevant and in its refusal to consider these representations or to allow Baskin relevant discovery on the question; (6) whether the trial court erred in ruling that plaintiff had mitigated its damages; (7) whether the trial court erred in awarding plaintiff attorney fees and costs.

On February 12, 1970, Chicago Title and Trust Co., as trustee under land trust No. 53113, as lessor, and defendant Baskin, an Illinois corporation, a wholly owned subsidiary of Hartmarx Specialty Stores, Inc., as tenant, executed a 25-year commercial lease for certain retail store space in the Lakehurst Shopping Center located at Waukegan Road and Illinois Highway 120, in Waukegan, Illinois. Chas. A. Stevens & Co., an Illinois corporation, also a wholly owned subsidiary of Hartmarx, was designated and executed the agreement as guarantor of the lease. Hartmarx had offices in Chicago, Illinois. The lease was amended by letters of amendment executed by the trustee and by Baskin on April 28, 1971, and on June 27, 1978, to increase the fixed minimum rent and to decrease the total square footage of leased space.

On September 30, 1982, lessor Chicago Title & Trust Co., land trust No. 53113, transferred and assigned its interest in certain Lakehurst Shopping Center leases, including the Baskin lease, to Teachers Realty Corporation, an Ohio corporation, which simultaneously assigned its interest to Chicago Title & Trust Company trust No. 1082512, the plaintiff in this litigation.

On August 9, 1984, the lessor land trust beneficiary, Lakehurst Joint Venture, a partnership with offices in Cleveland, Ohio, acting through its agent, Jacobs, Visconsi & Jacobs Co., and lessee Baskin, executed an amendment to the lease to sublease a portion of the tenant's space to a third-party tenant.

On January 1, 1985, Baskin assigned its lease to Chas. A. Stevens. While both parties acknowledge the assignment, no copy of an executed document assigning the lease space to Stevens is part of the record. No allegation is made that the lessor participated in the assignment or approved of it.

On January 14, 1988, lessor and Stevens executed a document entitled "Option to Terminate Lease," which gave lessor the sole right to terminate the Baskin-Stevens lease. Baskin did not participate or execute the written option to terminate.

On or about June 21, 1988, Chas. A. Stevens filed its petition in bankruptcy in the United States District Court, case number 88B 9575. The bankruptcy referee entered an automatic stay order on that date.

On August 2, 1988, lessor by its attorney filed an objection to Stevens' motion for approval of the sale of certain inventory. In the objection pleading signed by plaintiff-lessor's attorney, paragraph 7 states in part: "On or about January 12, 1988, Landlord and Stevens entered into an option to terminate which will terminate the lease on January 31, 1989."

On August 4, 1988, plaintiff lessor moved in the bankruptcy proceeding to modify the automatic stay order to permit lessor to bring a forcible entry and detainer action in the State court to recover possession of the leased premises, alleging that Stevens had paid no rent from June 21, the date the bankruptcy petition was filed, and as of August 1, Stevens owed lessor $43,071.15. The motion further alleged:

> "The Debtor has not assumed the lease. Pursuant to Section 365(d)(4) [11 U.S.C. §365(d)(4) (1988)] if the Debtor does not assume or reject an unexpired lease of non-residential real property on which the Debtor is a lessee within sixty days of after [sic] the date of the order for relief, then such lease is deemed rejected, and the Debtor is required to immediately surrender such non-residential real property to Landlords."

The motion further stated: "The Debtor has no equity in the Lease. The three leases will terminate on January 31, 1989." The record is silent as to the bankruptcy court ruling on the motion.

Thereafter on October 24, 1988, plaintiff-lessor filed its complaint for declaratory judgment against Baskin seeking a declaration of the respective rights of the parties under the lease, a declaration that Baskin is obligated under the lease and required to comply with all its terms and obligations, entry of judgment in favor of plaintiff-lessor against defendant Baskin in the sum of $36,694.35 through October 1,

1988, plus liquidated damages, interest, costs, attorney fees and other sums proved at trial or prove up. Baskin answered the complaint on December 1, with a general denial and prayed for dismissal of the suit.

On March 1, 1989, plaintiff moved for summary judgement based on section 8.2 of the rider to the lease, which stated in relevant part:

"Notwithstanding anything to the contrary contained in this Lease, tenant may without Landlord's consent assign this Lease or sublet the demised premises to Tenant's parent or to a subsidiary or affiliate of said parent or to any corporation growing out of a consolidation or merger of any of the aforesaid provided, however, Tenant and its successor or assignee and Guarantor, shall continue and remain fully liable hereunder."

Defendant responded to the motion on March 30 representing that discovery was required to determine the intent of the parties with respect to the interpretation and meaning of the lease provisions, that in its application to modify the automatic stay in the bankruptcy proceedings plaintiff represented that the lease would terminate on January 31, 1989, and therefore that defendant's obligations under the lease ended as of January 31.

Plaintiff in his reply filed on April 19 asserted that the relevant lease language was unambiguous so that parol evidence was not required to determine the clear intent of the parties, that counsel's representation that the lease would terminate on January 31, 1989, was error, that plaintiff's counsel by phone and by letter dated September 14, 1988, acknowledged her representations as to termination were error and that she was advised by debtor's counsel that the error was inconsequential, that all parties were aware it was an error, and no reliance was placed on the mistaken pleadings, that plaintiff has never exercised its option to terminate the lease and therefore that Baskin's claim that the lease terminated on January 31, 1989, was unfounded.

On May 4 the court entered its order finding no genuine issues of material fact and that plaintiff was entitled to judgment as a matter of law on the issue of Baskin's liability under the lease. The court found the language of section 8.2 of the rider to the lease was clear and unambiguous and that the course of the parties' conduct need not be considered. The court found that the pleadings of plaintiff's counsel in the Stevens bankruptcy proceedings did not terminate the lease. Summary judgment was entered for plaintiff and the matter was set for prove up on the issue of the amount of plaintiff's damages and attorney fees.

On June 16 defendant was given leave to file its amended answer to the complaint, adding as affirmative defenses allegations that plaintiff had failed to mitigate its damages and that plaintiff had committed a breach of the covenant of quiet enjoyment.

In its judgment order of June 20, the court entered judgment in favor of plaintiff and against defendant Baskin in the sum of $160,176.60 as and for plaintiff's rental damages through June 20, 1989, and found that plaintiff had taken reasonable steps to mitigate its damages. The court stated this order and the May 4 order for summary judgment were final and appealable. The court retained jurisdiction to consider plaintiff's damages for attorney fees.

On July 7 the court found plaintiff had proved and was entitled to an award of attorney fees and granted plaintiff fees in the sum of $14,596 and $301.03 in costs. The order was made final and appealable. Defendant appeals the orders of June 20 and July 7, 1989.

Section 2—1005 of the Illinois Code of Civil Procedure provides for the entry of summary judgment if the pleadings, depositions and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) Where the pleadings and other evidence raise no triable issue of material fact and the movant is clearly entitled to judgment, the court will grant summary judgment. *Village of Rosemont v. Lentin Lumber Co.* (1986), 144 Ill. App. 3d 651, 659, 494 N.E.2d 552; *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 197; *Montgomery Ward & Co. v. Wetzel* (1981), 98 Ill. App. 3d 243, 247, 423 N.E.2d 1170.

Summary judgment is appropriate where the issue before the court is the construction of the provisions in a contract. (*Village of Rosemont v. Lentin*, 144 Ill. App. 3d at 659; *Village of Fox Lake v. Aetna Casualty & Surety Co.* (1989), 178 Ill. App. 3d 887, 903.) Because summary judgment is a drastic remedy, the pleadings and evidence before the court must be construed most strictly against the moving party and liberally in favor of the nonmovant. (*Village of Fox Lake v. Aetna*, 178 Ill. App. 3d at 903; *Duffy v. Midlothian*, 92 Ill. App. 3d at 197.) The opponent of the summary judgment motion may rely on reasonable inferences drawn from pleadings, admissions, exhibits and affidavits submitted and, if the court finds that a genuine issue as to material fact exists, summary judgment is improper and should not be entered. *Duffy v. Midlothian*, 92 Ill. App. 3d at 197.

Defendant contends that genuine issues of material facts exist and that the court erred in entering summary judgment in plaintiff's fa-

vor. Specifically, defendant contends that plaintiff and Stevens, the successor tenant, varied the terms of the lease without defendant's consent or participation by entering into the option to terminate agreement on January 14, 1988, and that defendant therefore was discharged from its obligation as early as January 14, 1988, when the underlying agreement was changed.

Defendant further argues that summary judgment is inappropriate where the inferences sought to be drawn by the parties concern questions of motive, intent or subjective feelings. (*Montgomery Ward v. Wetzel*, 98 Ill. App. 3d at 250.) Defendant argues that because plaintiff twice gave notice to Stevens, the successor tenant, and therefore to Baskin, that the lease would terminate on January 31, 1989, the plaintiff had exercised its option to terminate. The notice to terminate appeared in pleadings filed by plaintiff with the court in the Stevens bankruptcy proceedings. Defendant contends that accordingly all tenant rights and obligations terminated at the very latest on January 31, 1989, as to both Stevens and defendant.

Initially we consider the clarity of the language of section 8.2 of the rider to the lease. The original lease identifies Baskin as the tenant and Chas. A. Stevens as the guarantor of tenant's obligations under the lease. Both are Illinois corporations and are identified as wholly owned subsidiaries of Hartmarx Specialty Stores, Inc. Section 8.2 of the lease rider specifically permitted Baskin as tenant to assign the lease or sublet the leased premises to its parent company, Hartmarx, or to a subsidiary or affiliate of Hartmarx, *i.e.*, Chas. A. Stevens, without lessor's consent but with the express caveat that "Tenant and its successor or assignee and Guarantor shall continue and remain fully liable" on the lease. Plaintiff is the successor in interest to the original lessor in the lease.

Baskin's assignment of the lease, without plaintiff's participation or consent, to its affiliate Chas. A. Stevens, as authorized by section 8.2 of the rider, clearly did not relieve Baskin of its primary tenant obligations under the lease. There is no ambiguity in the language of section 8.2. But the lease is silent as to whether the guarantor category is extinguished by the assignment or whether Baskin became the guarantor of the successor tenant's performance when the lease was assigned. We believe that Baskin's liability remained that of the primary tenant under the terms of the lease even though the lease was assigned to Stevens. The lease terms provided that a sublease would not absolve Baskin.

Three years later on January 14, 1988, plaintiff and the successor tenant Stevens executed an option to terminate the lease which re-

served only to the lessor the right to exercise the option by giving advance written notice to tenant 60 days prior to termination. The agreement expressed tenant's desire to terminate the lease. Defendant Baskin was not a party to the option to terminate agreement and no evidence was elicited that Baskin's interests were represented in these negotiations.

The original lease of February 12, 1970, at article X, permitted termination by the lessor upon tenant default and its failure to cure the default after notice or if tenant filed a bankruptcy petition which was not dismissed within 90 days or for other enumerated causes, provided that upon such occurrence lessor could retake possession of the premises without terminating the lease and with or without notice to the tenant, and provided for liquidated damages in sums computed to the end of the lease term. The lessor had the right but no obligation to relet the premises upon such terms as the lessor deemed satisfactory and in such event the tenant would be liable for any deficiencies and costs of such reletting.

The option to terminate included tenant's (Stevens') acknowledgment that its obligation to continuously conduct business in the leased premises was a material condition of the lease and acknowledged its agreement to comply with such condition through the termination date. The agreement provided for certain liquidated damages to be paid to the lessor in the event lessor exercised its option, notified the tenant of the termination date and tenant nonetheless continued to occupy the premises after the termination date. The agreement provided that upon lessor's election to terminate "[a]ll other obligations of the Tenant under the Lease will be terminated" upon tenant fulfilling certain conditions, *i.e.*, tender of payment of all accrued rents and other charges, nondefault by tenant of any lease terms, and production of accounting statements of gross sales upon which percentage rent computations are made. The agreement further provided: "Upon satisfaction by Tenant of its obligations as set forth herein, said Lease shall be deemed terminated, and Landlord and Tenant shall be released from any and all further liability thereunder."

Defendant argues that because the January 14, 1988, option to terminate varied the lease terms from the original agreement in which Baskin participated and because Baskin was not a party to the option agreement nor did defendant consent to these variations in lease provisions, its obligations subsequent to January 14 were discharged.

Defendant contends the guarantor is discharged from its obligation where the creditor varies the terms of the principal obligation,

here the lease, without the guarantor's consent. (*McHenry State Bank v. Y & A Trucking, Inc.* (1983), 117 Ill. App. 3d 629; *State Bank v. Cirivello* (1978), 74 Ill. 2d 426.) Defendant contends that it was deprived of an opportunity to object to the lease variations agreed to in the option agreement and that its right to enforce the landlord's lease commitments and to occupy the leased premises was extinguished or greatly curtailed by the execution of the option agreement by lessor and Stevens without defendant's participation or consent. Defendant contends for those reasons its obligations under the lease were extinguished upon execution of the option agreement.

Plaintiff responds that Baskin did not raise this argument in the trial court and cannot raise it for the first time on appeal. (*Richard v. Illinois Bell Telephone Co.* (1978), 66 Ill. App. 3d 825.) Plaintiff further argues that, even if this court considers the defendant's variance argument, the rule that such changes in the underlying agreement operate to discharge a guarantor will apply only to the guarantor. Since Baskin was not the original guarantor nor is Baskin now the guarantor by reason of the assignment of the lease to Stevens, the rule does not apply here.

Defendant contends that there remain genuine issues as to material fact as to the motive or intent of the lessor in executing the option to terminate agreement with Stevens and as to the import of lessor's representations as to lease termination on January 31, 1989 in the Stevens bankruptcy proceedings. Defendant argues that for these reasons summary judgment was improper, that plaintiff's representations as to termination are germane to the rights of the parties and that the court's refusal to consider these representations was reversible error. Defendant argues that the court erred in refusing to allow Baskin relevant discovery on these questions.

Next defendant contends that plaintiff exercised its option with Stevens to terminate the lease by giving the requisite advance written notice to Stevens twice in the bankruptcy proceedings. On August 2, 1988, plaintiff filed objections to Stevens' motion for approval of sale of certain inventory and in its objections referred to the "option to terminate [of January 14, 1988,] which will terminate the lease on January 31, 1989." Again on August 4, plaintiff moved to modify the automatic bankruptcy stay order to permit lessor to file a forcible entry and detainer action in the circuit court of Cook County to recover possession of the leased premises. Plaintiff alleged in its motion that the lease would terminate on January 31, 1989. These representations were made on lessor's behalf by its attorney of record, who informed the trial court in this litigation that as an officer of the court she

thereafter advised Stevens' attorney by telephone and by letter that she made the representations as to a January 31, 1989, lease termination in error. However, she acknowledged that she did not amend the pleadings in the bankruptcy court to correct the alleged errors. She argues here that the judge took the position that representations in the bankruptcy proceeding had no bearing on this case.

Defendant argues that these representations were advance written notice to the then-primary tenant, Stevens, of the exercise of lessor's option to terminate, the lease on January 31. Baskin argues that in light of this advance notice and plaintiff's exercise of its option to terminate, the trial court erred in permitting the plaintiff to arbitrarily reinstate the lease and erred in finding Baskin obligated under the lease after January 31.

■ Defendant cites *Wanderer v. Plainfield Curtain Corp.* (1976), 40 Ill. App. 3d 552, for its holding that in the event of termination pursuant to the exercise of an option to terminate, any lessor's damages are fixed as of the date of the termination and the tenant is released from further liability.

Defendant argues that lessor's representations of a January 31 lease termination in the bankruptcy proceedings are relevant to this action to determine the intentions of the parties (*First Bank & Trust Co. v. Post* (1973), 10 Ill. App. 3d 127), and the court's refusal to consider them and to allow defendant discovery pursuant thereto constitutes reversible error. Baskin argues that testimony and subsequent conduct should be considered to determine plaintiff's intentions in light of its statements to the trial court which are inconsistent with the unequivocal representations as to termination in the bankruptcy pleadings.

We note that Hartmarx Specialty Stores, Inc., appears on the service list for plaintiff's filing of the August 2, 1988, objections to debtor's motions for approval of sale of certain inventory and extension of time to assume or reject certain leases, and for plaintiff's August 4 lessor's motion to modify automatic stay to permit the filing of a forcible entry and detainer action to permit lessor to take immediate possession of the premises and to require debtor tenant to vacate and turn the premises over to plaintiff. Baskin's name does not appear on the service list.

Plaintiff responds that the trial judge has discretion to control the scope of discovery, and where the discovery request is intended to gain disclosure of irrelevant material or there is insufficient evidence of its relevance, the court can refuse or limit discovery. (*M. Loeb Corp. v. Brychek* (1981), 98 Ill. App. 3d 1122, 1125, 424 N.E.2d 1193.)

Where the requested discovery is refused by the trial court because it would not produce evidence material to the matter in controversy and absent abuse of the trial court's discretion, the reviewing court will affirm the trial court's refusal of discovery. (*Harris Trust & Savings Bank v. Chicago College of Osteopathic Medicine* (1983), 116 Ill. App. 3d 906, 912, 452 N.E.2d 701; *Dawson v. Duncan* (1986), 144 Ill. App. 3d 532, 540-41, 494 N.E.2d 900.) Plaintiff contends that the defendant's discovery requests initially sought information from 1970 forward dealing with mall security and safety in support of the affirmative defense of breach of the covenant of quiet enjoyment, but then contended the information sought was relevant to plaintiff's mitigation of damages. Because the affirmative defenses of breach of a quiet enjoyment covenant and failure to mitigate were not raised until a month after the trial court entered summary judgment, plaintiff argues the court's denial of discovery was not an abuse of discretion.

Defendant responds that the standard is not whether the discovery sought is admissible evidence but whether the discovery would lead to admissible evidence and that for this reason great latitude is permitted in the scope of discovery. (*Bass v. Cincinnati, Inc.* (1989), 180 Ill. App. 3d 1076, 1082, 536 N.E.2d 831.) Relevancy is determined by reference to the issues; something is relevant if it tends to prove or disprove something in issue. (*Pemberton v. Tieman* (1983), 117 Ill. App. 3d 502, 505, 453 N.E.2d 802.) Defendant correctly contends that the issue in this case is whether plaintiff terminated the lease, and accordingly, the requested discovery is relevant.

When the assignment of the lease occurred in 1985, Stevens became the tenant with the first obligation to comply with the lease terms. However, Baskin agreed to be bound on the lease whether an assignment occurred or it did not. The assumption of these obligations by Stevens from the date of the assignment in 1985, when Stevens became the occupying tenant, until its bankruptcy and release from the tenancy in that proceeding did not alter Baskin's continuing obligation to fulfill the tenant commitments under the lease nor did it affect Baskin's right to resume occupancy of the leased premises until 1996 when the lease term expires.

A question of material fact exists as to whether lessor, while releasing Stevens, intended to hold Baskin to full compliance with the tenant obligations until the lease expired in 1996 or whether lessor intended to and did terminate the lease and all tenant obligations thereunder by its participation and representations made in the Stevens bankruptcy proceeding. The statements made in the bankruptcy proceedings, while not conclusive, are probative on the question of

whether the lease was terminated notwithstanding the affidavit of plaintiff's attorney to the contrary. Baskin should be afforded an opportunity to take discovery to determine whether the lease was terminated since the events in the bankruptcy court occurred outside Baskin's presence and without its participation or consultation. We find that the trial court erred in ignoring completely the events and attorney representations which took place in the bankruptcy court.

We conclude that summary judgment was inappropriate and that the court's judgment order should be reversed and remanded for a new hearing on the motion for summary judgment. Prior to the hearing, Baskin should be given the opportunity for discovery on the sole issue of whether the plaintiff in fact had terminated the lease, and should then have the opportunity to submit any further affidavits or pleadings as are appropriate based on any new facts discovered. The plaintiff should be permitted to submit any further proof in support of its contention that the lease had not been terminated. Accordingly, we reverse the trial court's entry of summary judgment in plaintiff's favor and remand this cause for further proceedings in accordance with this opinion.

■ Defendant next raises the issue of lessor's mitigation of its damages, and argues that if this court finds Baskin liable under the lease, damages were improperly awarded because the evidence failed to prove that plaintiff took all reasonable steps to find a replacement tenant for the space. Defendant cites *MBC, Inc. v. Space Center Minnesota, Inc.* (1988), 117 Ill. App. 3d 226, 233-34, where the court held that lessor's failure to offer the space to a prospective replacement tenant on the same terms as the original lease and its attempts to secure alternate leases at considerably higher rentals constitutes a breach of its duty to exercise reasonable diligence to mitigate damages. Defendant contends that plaintiff breached its duty to mitigate by failing to advertise the space in trade journals, to advertise locally, to use services of local brokers, or to offer the space at the original lease amount and that it encouraged prospective tenants to consider other space, and for these reasons plaintiff is not entitled to recover damages from Baskin.

Plaintiff contends that a trial court's finding as to damages should not be disturbed unless the finding is against the manifest weight of the evidence. (*MBC, Inc. v. Space Center Minnesota, Inc.*, 117 Ill. App. 3d at 234.) While in *MBC, Inc.* the court found the lessor had failed to mitigate when it attempted to relet the premises at rates 50% higher than the breached lease, the trial court here found that finding did apply to the facts of this case. Testimony here established

that plaintiff made a substantial effort to rent the space but was unable to interest potential tenants even before considerations of financial terms occurred. Plaintiff contends the record discloses ample evidence to support the court's finding that plaintiff made reasonable efforts to mitigate its damages. Plaintiff argues a plea of failure to mitigate damages is an affirmative defense which must be pled and proved by defendant (*Illiana Machine & Manufacturing Corp. v. Duro-Chrome Corp.* (1987), 152 Ill. App. 3d 764, 769, 504 N.E.2d 974), and because the evidence supports the court's finding that the lessor had made a good-faith effort to relet the space, the finding should not be overturned.

Defendant replies that reasonable diligence requires lessor to attempt to lease the property at or near the contract (lease) rate (*MBC, Inc. v. Space Center*, 177 Ill. App. 3d at 234; *J.L. Williams v. Kaiser Aluminum* (N.D. Tex. 1975), 396 F. Supp. 288; *Mar-Son, Inc. v. Terwaho Enterprises, Inc.* (N.D. 1977), 259 N.W.2d 289), and plaintiff's failure to attempt to relet at the lease rate constituted a breach of the duty to mitigate.

We find the record supports the trial court's finding that plaintiff had met the lease requirement to mitigate its damages.

■ Finally, defendant contends that because plaintiff should not have prevailed in this litigation, its fees and costs should not have been assessed against defendant. As an alternative argument, defendant argues that plaintiff's fee petition should be reduced or denied because of inconsistent and duplicative entries and inadequate documentation. *Sanchez v. Schwartz* (7th Cir. 1982), 688 F.2d 503; *Neely v. City of Grenada* (5th Cir. 1980), 624 F.2d 547; *Ramos v. Lamm* (10th Cir. 1983), 713 F.2d 546, 554.

Plaintiff's defense to this contention is that Baskin did not question its basic liability for the fees nor did it contest the reasonableness of the fee rates. Plaintiff argues that defendant questioned only the charges for amount of conference time among plaintiff's counsel and a time period discrepancy. These questions were answered to the trial court's satisfaction, and after careful scrutiny, the court found plaintiff's petition reasonable. In *Losurdo Brothers v. Arkin Distributing Co.* (1984), 125 Ill. App. 3d 267, 275, 465 N.E.2d 139, the court held that the trial court's decision on an award of attorney fees will not be reversed absent an abuse of discretion. We find the court carefully considered the plaintiff's petition for fees and defendant's objections and that no abuse of discretion occurred here.

Accordingly, if summary judgment is subsequently regranted or if judgment is entered for plaintiff following a trial, the issues of mitiga-

tion of damages and attorney fees need not be addressed again since the court committed no error in these determinations. However, if summary judgment is denied and judgment is entered for Baskin, then the orders on mitigation and attorney fees would be moot and should be vacated.

For all of the foregoing reasons, the judgment of the trial court is reversed and remanded for further proceedings consistent with this opinion.

Reversed and remanded.

McNAMARA and EGAN, JJ., concur.