966 F.2d 1456
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 AMERICAN NATIONAL BANK AND TRUST COMPANY OF CHICAGO, Trustee
under Trust 26056, and Midwest Bank and Trust
Company, Trustee under Trust 71-05-580,
Plaintiffs-Appellees,
v.
HOYNE INDUSTRIES, INC., Defendant-Appellant.
 
 No. 90-2908.
 United States Court of Appeals, Seventh Circuit.
 Argued Sept. 24, 1991.
Decided June 1, 1992.
 Before CUDAHY, and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 
 ORDER
 
 1
 Hoyne Industries, a manufacturer of mirrors, leased two buildings in Cicero, Illinois from two land trusts, the trustees of which were American National Bank and Trust Company of Chicago, and Midwest Bank (the plaintiffs). When Hoyne decided it did not need the buildings, it abandoned them. Unfortunately, almost one and one-half years remained on the lease terms. The plaintiffs sued Hoyne for rent due and other damages. The district court held that Hoyne had breached the leases and awarded the plaintiffs $371,000 in damages. Hoyne appeals, and we affirm.
 
 I.
 
 2
 Daniel O'Leary and his wife, Ann, were real estate brokers who owned and managed 18 pieces of industrial property either in their own names or through Illinois land trusts. Two of those properties are the subject of this case. The first is an 85,000-square-foot building at 2829 Ogden Avenue in Cicero. American National Bank held legal title to this property as trustee of a land trust. The second property, which is adjacent to the first, is a 35,000-square-foot building at 3215 59th Avenue in Cicero. Midwest Bank held legal title to this property as trustee of a land trust.
 
 
 3
 On March 19, 1969, American National Bank leased the Ogden Avenue property to Hoyne Industries (the "Ogden Avenue lease"). The original lease term was 15 years, but the parties later extended the lease to June 15, 1989. On April 1, 1986, Midwest Bank leased the 59th Avenue property to Hoyne (the "59th Avenue lease"). The lease for the 59th Avenue property also was to expire on June 15, 1989. Both leases were "net" leases, requiring Hoyne to pay, besides its rent, all expenses connected with the buildings, such as taxes, assessments, insurance, repair, and maintenance.
 
 
 4
 At the time it entered the leases, Hoyne was a wholly-owned subsidiary of Royal Crown Companies, Inc. At the end of 1986 and beginning of 1987, Royal Crown sold its assets, including Hoyne, to Home Furnishings Acquisition Company (HFAC). HFAC, in turn, assigned its interest in Hoyne to a new Delaware corporation, also named Hoyne Industries, Inc. The original Hoyne was dissolved in 1988. At least for a time, the "new" Hoyne's business did not differ from the "old" Hoyne's. Hoyne continued to operate manufacturing facilities at the Ogden Avenue and 59th Avenue properties. Until February 1988, it also performed all obligations under the leases as they had been performed by the old Hoyne, continuing to pay the specified rent, to pay real estate taxes, and to insure the buildings.
 
 
 5
 Although Hoyne continued to adhere to the leases' terms, it new management had decided that to make the company profitable it would be necessary to stop manufacturing at the Ogden Avenue and 59th Avenue facilities. Consequently, after informing the plaintiffs of its decision in December 1987, Hoyne vacated the buildings at the end of the following month. Hoyne paid rent on the buildings through February 1988, as well as deposits for real estate taxes which the plaintiffs applied to 1987 tax indebtedness. After Hoyne left, the plaintiffs spent over $38,000 for repairs to the buildings. The plaintiffs also attempted to re-rent or sell the buildings. However, rather than offering the buildings for the same rent Hoyne had paid (which was a bargain in 1988), the plaintiffs offered the buildings for rent at the current market rent. The buildings remained empty for a considerable time. The Ogden Avenue building was finally sold in April 1989 to the first party that made a written offer. The 59th Avenue building was leased in December 1989, also to the first party that made a written offer.
 
 
 6
 The plaintiffs eventually sued Hoyne to recover the damages the plaintiffs claimed Hoyne's breach had caused. After discovery, both sides moved for partial summary judgment. The plaintiffs argued that the "new" Hoyne had assumed the lease from the "old" Hoyne, that Hoyne had breached its obligations under the lease, and that no material factual issue therefore existed concerning Hoyne's liability. Hoyne, on the other hand, contended that it had not assumed the lease from the "old" Hoyne because the plaintiffs had not consented to the leases. Therefore, Hoyne argued, it was not bound by the leases. Alternatively, Hoyne argued that it was not liable for most of the rent the plaintiffs were seeking because the plaintiffs had failed to take reasonable steps to mitigate their damages by offering the buildings at current market rates rather than the rate Hoyne had been paying.
 
 
 7
 The district court granted partial summary judgment for the plaintiffs and denied Hoyne's motion for summary judgment, holding that Hoyne had assumed and was therefore bound by the leases, and that whether the plaintiffs had reasonably mitigated their damages was a question of fact requiring a trial. See American Nat'l Bank v. Hoyne Industries, Inc., 738 F.Supp. 297 (N.D.Ill.1990). After a three-day trial on the issues of mitigation and damages, the court held that the plaintiffs had reasonably mitigated their damages and awarded the plaintiffs $371,000 for lost rent, taxes, costs of repair, and prejudgment interest.
 
 II.
 
 8
 Hoyne's first two arguments focus on the district court's rulings on the summary judgment motions. Hoyne argues that the district court should have granted its motion for summary judgment and denied the plaintiffs' motion because Hoyne did not assume the leases and because the plaintiffs' attempts to re-rent the buildings at market rates were not reasonable mitigation. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). We review de novo the district court's decision to grant summary judgment. Santiago v. Lane, 894 F.2d 218, 221 (7th Cir.1990).
 
 A.
 
 9
 Hoyne first argues that the leases did not bind it after it abandoned the buildings because it did not assume those leases from the "old" Hoyne. Under Illinois law, if the assignee of a lease does not also assume the lease's obligations, privity of estate, but not privity of contract, exists between the assignee and the original lessor. Therefore, the assignee is liable for rent only so long as it possesses the property. Leitch v. New York Central R. Co., 388 Ill. 236, 58 N.E.2d 16, 18-19 (1944). However, if the assignee assumes the lease's obligations, privity of contract exists between the assignee and the original lessor, and "the assignee cannot shake off his contractual obligations by making an assignment or going out of possession." Id.
 
 
 10
 The district court concluded that no material factual issue existed as to whether "new" Hoyne had assumed "old" Hoyne's liabilities under the Ogden Avenue and 59th Avenue leases. The Agreement for Purchase that transferred "old" Hoyne's assets to "new" Hoyne supports this conclusion. Under the Agreement, Hoyne acquired all "leaseholds and leasehold improvements," "material contracts," and "contract rights." (Record 42, Exh.G. §§ 2(a), 1(p)). Hoyne also agreed to assume the liabilities of "old" Hoyne set forth on Exhibit 3(i) to the Agreement. (R. 42, Exh.G § 3). Exhibit 3(i), in turn, stated that Hoyne would assume all of "old" Hoyne's "debts, obligations, contracts and liabilities" except any liabilities not disclosed in the Agreement and its exhibits. Exhibit 6(1) of the Agreement listed the Ogden Avenue and 59th Avenue leases as material contracts. We agree with the district court that "[i]t is hard to imagine a clearer expression of the intent of Old Hoyne to assign the leases and, more importantly, of the intent of New Hoyne to assume Old Hoyne's obligations under the lease[s]." 738 F.Supp. at 299.
 
 
 11
 Nonetheless, Hoyne argues that it did not assume liability under the leases because the plaintiffs did not formally consent to the leases' assignment. In December 1987, Hoyne's attorney, Roy Thornton, sent two letters, one concerning each lease, to Daniel O'Leary. The letters informed O'Leary that Hoyne and Royal Crown were negotiating to sell Hoyne's assets, including the leases. The letter concerning the 59th Avenue lease asked O'Leary to acknowledge his consent to the lease's assignment by signing and returning the letter. The letter concerning the Ogden Avenue lease, however, merely asked O'Leary to acknowledge that he had received the letter; the Ogden Avenue lease, unlike the 59th Avenue lease, did not require the landlord's consent to assignment. O'Leary did not return either letter to Thornton.
 
 
 12
 The plaintiffs' failure to consent to the assignment of the leases does not by itself negate the assignments. As noted, the Ogden Avenue lease did not require the landlord's consent to assignment. The 59th Avenue lease did require consent, but under Illinois law, that requirement was "intended solely for the benefit of the lessor." Woods v. North Pier Terminal Co., 131 Ill.App.3d 21, 475 N.E.2d 568, 570 (1st Dist.1985). An assignment that violates a lease provision requiring consent is not void but merely voidable by the landlord. When, as in this case, the landlord does not treat the assignment as void, the assignment is effective. See id.
 
 
 13
 Hoyne does not, however, rely on the bare fact that the plaintiffs refused to consent. Hoyne also points to Section 11 of the agreement, which sets out conditions precedent to "new" Hoyne's obligations. One of the conditions precedent is that "[t]he approvals and consents contemplated in Sections 6(o) and 7(c) shall have been obtained." Section 6(o), in turn, directs the reader to Exhibit 6(o) of the Agreement, which states generally that "Consents of lessors are required by the terms of real ... property lease agreements." Based on these provisions, Hoyne argues that "the leases were neither assigned nor assumed because the condition precedent to assignment--consent--was not fulfilled." Hoyne buttresses this argument by citing Thornton's deposition testimony. Thornton testified that "[t]here was no assumption agreement executed, because ... Mr. O'Leary ... never responded to my letters. So I advised the purchaser that we didn't have consent, and consequently, we never executed the assignment and assumption documents."
 
 
 14
 Despite Thornton's testimony and the contract language Hoyne cites, we agree with the district court that no genuine issue of fact exists as to whether Hoyne assumed the two leases from "old" Hoyne. The condition precedent Hoyne claims was not fulfilled was the obtaining of a consent "contemplated in section 6(o)...." Section 6(o) contained the seller's warranties; as the district court pointed out, that section "merely warrants that only the listed consents are required to consummate the transactions listed in the Agreement." 738 F.2d at 300. Among the listed consents are those in Exhibit 6(o). That exhibit, however, only notes generally that the terms of real estate leases require consent and does not mention the specific leases that do or do not require consent. We agree with the district court that these two provisions lead to the conclusion that § 11(f) requires as a condition precedent only those consents necessary to complete the transactions.
 
 
 15
 As noted, the plaintiffs' consent was not necessary to complete the assignment of either lease. The Ogden Avenue lease did not even require consent before assignment. The 59th Avenue lease required consent, but the plaintiffs could, and did, waive that requirement. Since consent was not necessary to complete the assignments, the condition precedent in § 11(f) did not prevent Hoyne's assumption of the leases.
 
 
 16
 Even if consent was a condition precedent, Hoyne could waive this condition. See MBC v. Space Center Minnesota, 177 Ill.App.3d 226, 532 N.E.2d 255, 259-60 (1st Dist.1988) (contract right can be waived, and waiver can be demonstrated by conduct); Chicago College of Osteopathic Medicine, 719 F.2d 1335, 1343 (7th Cir.1983) (same). Hoyne's conduct demonstrates that it waived any condition that consent be obtained, and that it assumed the leases despite the lack of consent. Hoyne signed a contract that quite clearly provided for the assignment and assumption of the leases. The "new" Hoyne accepted the leases' benefits, moving into the two buildings and conducting essentially the same operations at those locations as the "old" Hoyne had conducted. Until it abandoned the property, Hoyne performed all obligations under the two leases as old Hoyne had performed them. Hoyne never claimed that it was not bound by the leases until it filed an amended answer in this case. Before the litigation started, Hoyne discussed subletting the buildings, an action necessary only if Hoyne was bound by the leases. Hoyne also accepted the plaintiffs' claims that Hoyne was required to make certain building repairs and insure the property as the leases required.
 
 
 17
 The only statement by Thornton that could create a factual issue was his assertion that no assignment or assumption agreement was ever executed. However, no particular form of assignment is necessary so long as some fact exists evidencing intent to assign ownership. See Klehm v. Grecian Chalet, Ltd., 164 Ill.App.3d 610, 518 N.E.2d 187, 190-91 (1st Dist.1987). Also, Hoyne points to no language in the Agreement that contemplates any separate assignment or assumption agreements. Given the Agreement of Sale and the fact that Hoyne acted as if it were bound by the leases, Thornton's deposition testimony creates no genuine factual issue regarding Hoyne's assumption of the two leases.
 
 B.
 
 18
 Hoyne also challenges the district court's holding regarding mitigation of damages. In Illinois, landlords have a statutory duty to "take reasonable measures to mitigate the damages recoverable against a defaulting lessee." Ill.Ann. stat. ch. 110, para 9-213.1 (Smith-Hurd Supp.1991). Hoyne argues that the district court erred when it held that the plaintiffs' attempts to re-rent the buildings at market rates, rather than asking for the lower rent Hoyne had been paying, could, depending on the facts at trial, fulfill their duty to mitigate damages.
 
 
 19
 Hoyne bases its argument on MBC, Inc. v. Space Center Minnesota, 177 Ill.App.3d 226, 532 N.E.2d 255 (1st Dist.1988), a case the district court declined to apply. In MBC, a tenant, like Hoyne, walked away from its lease before the term had ended. The lease provided that "Upon ... Lessor's entry into possession without termination of this lease, Lessor may, and shall use its reasonable efforts, to relet the premises ... for such rent ... as Lessor in Lessor's sole discretion shall determine...." Id. at 260. A divided panel in MBC held that this language imposed a duty on the landlord to take reasonable steps to mitigate its damages by re-renting the premises. Id. at 261. The majority in MBC went on to hold that the landlord failed in its duty because it attempted to re-rent the premises at market rates rather than at the rent it had been charging the tenant. See id. at 262-63.
 
 
 20
 The plaintiffs note that MBC did not purport to interpret para. 9-213.1, the statute imposing the duty to mitigate, because the breach of the lease in MBC occurred more than two years before the statute's effective date of January 1, 1984. See 532 N.E.2d at 257. That is not a meaningful distinction. The majority in MBC imposed a duty to take reasonable steps to mitigate damages, see id. at 261, 262, the same duty the statute imposes. The MBC majority was defining in part what was "reasonable." As the district court forthrightly noted, "there seems to be no reason the court would have reached a different result under the statute." 738 F.Supp. at 302.
 
 
 21
 Despite its striking factual similarity to this case, the district court chose not to follow MBC because the court determined that the Illinois Supreme Court would not follow MBC's approach to mitigation but would instead decide that whether an attempt to mitigate is reasonable is a question of fact to be decided based on all the evidence of the landlord's rental efforts. See 738 F.Supp. at 302. Under this view, the amount of rent sought, while relevant, is not determinative. Hoyne argues that the district court erred in rejecting MBC. Hoyne contends that the principle enunciated in Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), and its progeny compelled the district court to treat MBC as authoritative, absent "a good reason to believe that [the Illinois Supreme Court] would reject [that] decision...." Tippecanoe Beverages, Inc. v. S.A. El Aquila Brewing Co., 833 F.2d 633, 638-39 (7th Cir.1987).
 
 
 22
 At the time the district court decided, and at the time this appeal was briefed, MBC was the only Illinois case to even address whether attempts to re-rent at higher market rates could fulfill a landlord's duty to mitigate damages. One other Illinois case has cited MBC regarding mitigation. In Chicago Title and Trust Co. v. Baskin Clothing Co., 219 Ill.App.3d 726, 579 N.E.2d 1045 (1st Dist.1991), a tenant argued, based on MBC, that its landlord failed to mitigate damages because the landlord failed to offer the premises at the rental amount the tenant had been paying. See id. at 1052-53. The court held that the record supported the trial court's finding that the landlord had fulfilled its duty to mitigate based on all the evidence of the landlord's efforts to re-rent the premises. Id. at 1053.
 
 
 23
 The court in Baskin distinguished MBC, stating that unlike in MBC, the landlord in Baskin "made a substantial effort to rent the space but was unable to interest potential tenants even before considerations of financial terms occurred." Id. at 1053. However, Baskin's precise holding is obscure because the court never did state whether the landlord actually offered the building at a higher rent. Since the Baskin court did not explicitly reject MBC, it is unlikely that the court was holding that whether a landlord has mitigated damages is always a question of fact, regardless of the landlord's asking price. A more likely holding, if we assume that the landlord was actually asking for a higher rent, is that the asking price does not matter if the landlord could not have rented his building at any price. But given that the court did not state that the landlord was asking for any specific price, Baskin most likely stands only for the proposition that MBC does not apply when a landlord is merely entertaining offers and does not expressly ask for a substantially higher rent than the defaulting tenant had been paying. That holding does not make MBC inapplicable in this case because the plaintiffs expressly offered the property for rent at market rates.
 
 
 24
 That leaves MBC as the only Illinois case addressing the issue we face here. Were the decision up to us, we would not take MBC's approach. The leases here allowed the plaintiffs to re-rent the premises at any rent they saw fit without excusing Hoyne from its liability to satisfy any deficiencies. In fact, the 59th Avenue lease stated that "Landlord shall not be deemed to have failed to use such reasonable efforts [to mitigate] ... by reason of the fact that Landlord has sought to relet the Leased Premises at a rental rate higher than that payable by Tenant under the Lease (but not in excess of the then current market rental rate)." Hoyne does not argue any traditional contract defense, for example that the leases were unconscionable, or that it signed the leases under duress, or that it was induced to sign the leases by fraud. There is no reason not to enforce the parties' bargain. The statute itself provides no basis; "reasonableness" is a flexible standard that can easily accommodate attempts to re-rent at market rates. However, the lease in MBC also contained a clause allowing the landlord to seek to re-rent the premises at a higher rate without terminating the lease. Implicit in this is an agreement that attempting to re-rent at a higher rate would not release the tenant from liability; a tenant is liable for rent as long as the lease binds it. But MBC disregarded the parties' agreement and limited the tenant's liability for rent because the majority thought that attempting to re-rent the premises at the higher market rate was not a "reasonable" attempt to mitigate.
 
 
 25
 While we may disagree with MBC, it is the only Illinois case addressing the issue we face and it is not distinguishable. We agree with Hoyne that mere disagreement with a state appellate court's decision is not a sufficient basis for refusing to apply it. This, however, does not carry the day for Hoyne; even if there is no sufficient basis for disregarding MBC in this case, there is an alternative basis for upholding the district court's decision not to limit the plaintiffs' recovery for rent due.
 
 
 26
 In denying Hoyne's motion for summary judgment, the district court, besides refusing to apply MBC, held that even if the plaintiffs' attempts to mitigate were unreasonable, their recovery would not be limited if taking "reasonable" steps to mitigate would have made no difference in how long it took to re-rent the two buildings. See 738 F.Supp. at 302 ("even if efforts to relet at a higher rate were per se unreasonable, there would remain the factual questions of whether and how soon the premises could have been relet at the same rental rate as had been paid by [Hoyne]"). After the issue was fully explored at trial, the district court found that "even if the property had been priced as defendant suggests, defendant has failed to prove that the change in price would have made a difference in the ultimate leasing of the property." American Nat'l Bank and Trust Co. v. Hoyne Indus., Inc., No. 88 C 7756, slip op. at 10-11 (N.D.Ill. July 30, 1990). Thus, the court held that Hoyne had "failed to prove by a preponderance of the evidence plaintiffs' failure to mitigate damages." Id. at 11. These findings were not clearly erroneous. Hoyne's own expert testified that the type of property involved in this case typically remains unleased for an average of ten months, and that such property can "ordinarily" remain unleased for 18 months or more. Hoyne's expert also testified that even if the plaintiffs had sought to re-rent the buildings at the same rates it had charged Hoyne, the property may well have remained unleased for the time it did. Failure to mitigate is an affirmative defense that Hoyne had to prove. See Baskin, 579 N.E.2d at 1053; Fisher v. Fidelity & Deposit Co. of Maryland, 125 Ill.App.3d 632, 466 N.E.2d 332, 338 (5th Dist.1984). While there was evidence that the plaintiffs might have been able to re-rent the property more quickly at the lower rate, the district court was justified in finding that Hoyne had not proven that the price ultimately made a difference.
 
 
 27
 In its opening brief, Hoyne focused its fire solely on the district court's decision not to apply MBC. Hoyne ignored the court's alternate basis for its decision on mitigation despite the fact that this basis was sufficient to support the court's judgment. Hoyne has therefore waived any challenge to the district court's alternative holding, so we may affirm the district court's decision on that basis. See Reynolds v. East Dyer Development Co., 882 F.2d 1249, 1254 (7th Cir.1989). Although Hoyne does devote a short footnote in its reply brief to disputing the legal basis for the district court's alternate holding, that was too late; the appropriate place to raise arguments challenging a district court's decision is in the opening brief, not the reply brief. See id. at 1253 n. 2.
 
 
 28
 In any event, it was not inconsistent with MBC to hold that seeking to re-rent at a higher rental rate would not limit the plaintiffs' recovery if Hoyne did not prove that a lower price would have resulted in the property being rented more quickly. There is language in MBC that suggests that when a landlord seeks to re-rent at a higher rental rate he terminates any liability for rent because his decision terminates the lease. This implies that whether or not the property would have been re-rented more quickly at a lower price is irrelevant. However, MBC does not expressly address the issue. Moreover, the three cases MBC relied on were all cases in which the asking price would have made a difference. See Consolidated Sun Ray, Inc. v. Oppenstein, 335 F.2d 801, 811 (8th Cir.1964) (landlord refused legitimate offers to rent premises); Williams v. Kaiser Aluminum & Chemical Sales, Inc., 396 F.Supp. 288, 295 (N.D.Tex.1975) (court found that landlord could easily have re-rented premises at or near rental rate defaulting tenant had paid); MAR-SON, Inc. v. Terwaho Enterprises, 259 N.W.2d 289, 292 (N.D.1977) ("If seeking a higher rent inhibits the re-rental of the premises, it cannot be found in good faith. There was testimony which showed that the higher rent figure was firm and did deter re-rental.").
 
 
 29
 In fact, to hold that failure to mitigate limits a landlord's damages even if attempts to mitigate would have made no difference is inconsistent with Illinois law. Before Illinois imposed a statutory duty on landlords to mitigate, Illinois cases took three conflicting approaches. Some cases held that landlords had no duty to mitigate. Others held that the general rule of mitigation from contract law applied: a landlord could not sit idly by and let damages pile up; instead, the landlord had a duty to exercise reasonable diligence in finding a substitute tenant. A third line of cases held that a landlord only had a duty to accept a suitable tenant when offered. See generally Chicago Title & Trust Co. v. Hedges Mfg. Co., 91 Ill.App.3d 173, 414 N.E.2d 232, 234-35 (2d Dist. 1980) (surveying cases following the various approaches).
 
 
 30
 Based on this common law background, it is reasonable to assume that when the Illinois legislature imposed a duty on landlords to take affirmative steps to mitigate damages, it imposed the general contract law rule of mitigation. Under this approach, a landlord is entitled to damages equal to "the rent agreed to be paid, less whatever he could have made out of the land by the use of due diligence once it came into his possession." Id. at 235 (quoting Resser v. Corwin, 72 Ill.App. 625, 629 (1897)). If a landlord fails to mitigate, under general contract law principles he may not recover "the increased loss, that which was avoidable by the performance of the duty...." Culligan Rock River Water Cond. Co. v. Gearhart, 111 Ill.App.3d 254, 443 N.E.2d 1065, 1068 (2d Dist.1982) (emphasis added). The logical converse to this is that if the tenant had lost the same amount even if the landlord had taken reasonable steps to mitigate, the landlord's damages should not be limited. The district court recognized and correctly applied this principle when it decided that the plaintiffs should receive full damages for rent due even if their attempts to mitigate were not reasonable under Illinois law.
 
 III.
 
 31
 Hoyne makes three other arguments. After Hoyne abandoned the plaintiffs' buildings, the plaintiffs notified Hoyne that they were terminating Hoyne's right to possession without terminating the lease. Hoyne argues that since a lease is in part a conveyance of property, it is inconsistent to say that a lease may exist without the right to occupy the property. Therefore, says Hoyne, when the plaintiffs terminated Hoyne's right to possession, they terminated the leases and absolved Hoyne from any further liability for rent.
 
 
 32
 This argument is a red herring. Hoyne admits that a landlord may terminate a tenant's right to possession without terminating the lease if the lease expressly permits this action. The 59th Avenue lease expressly allowed the landlord to terminate Hoyne's right to possession without terminating the lease. The Ogden Avenue lease did not contain such an express provision. However, section 20.14 of the 59th Avenue lease provided that a default under either lease is a default under both leases, and allowed the plaintiffs to apply the 59th Avenue lease's remedies to breaches of the Ogden Avenue lease.[1] One of those remedies was the option of terminating Hoyne's right to possession without terminating the lease. Section 20.14 thus expressly authorized the plaintiffs to terminate Hoyne's right to possess the Ogden Avenue property without terminating the Ogden Avenue lease. Therefore, the plaintiffs' decision to terminate possession did not terminate the lease.
 
 
 33
 Hoyne also argues that in assessing damages for repairs the plaintiffs made to the building after Hoyne abandoned them, the court failed to distinguish between repairs made necessary by Hoyne's failure to maintain the premises properly and "repairs" that were really capital improvements to the buildings that are not chargeable to Hoyne. Unfortunately, Hoyne does not bother to set out which repair costs it is referring to, much less set out which repair costs were properly assessed against it and which were not. The court made detailed findings about which repair costs incurred by the plaintiffs were properly chargeable to Hoyne. See Memorandum Opinion at 19-21. Without further guidance from Hoyne, it is impossible for us to say that these findings were clearly erroneous. In any event, our review of the record indicates that the district court did not clearly err.
 
 
 34
 Hoyne finally argues that the district court erred in holding that Hoyne was responsible for paying real estate taxes incurred during the term of the two leases that were not payable until after the lease term ended. The Ogden Avenue lease required Hoyne to pay real estate taxes "which shall or may during the term of this lease be levied, assessed, charged, or imposed upon the premises." The 59th Avenue lease contained almost identical language. In First Nat'l Bank of Highland Park v. Mid-Central Food Sales, 129 Ill.App.3d 1002, 1005, 473 N.E.2d 372 (1st Dist.1984), the court held that a lease provision requiring the tenant to pay real estate taxes "which are imposed or levied upon or assessed against the premises" required the tenant to pay real estate taxes accruing during the lease term but billed after the term ended. Id. at 374-77. Given the similarity of the lease language in Mid-Central and the language in the Ogden Avenue and 59th Avenue leases, the district court correctly held that Hoyne was obligated to pay all taxes that accrued during the lease terms, even if billed after the terms ended.
 
 
 35
 For the reasons stated above, the district court's judgment is
 
 
 36
 AFFIRMED.
 
 
 
 [1]
 Section 20.14 actually states that "a default under either lease shall be deemed a default under both leases, and Tenant shall have all remedies provided in Article XVII [of the 59th Avenue lease]." The reference to "Tenant" rather than "Landlord" is an obvious typographical error, as is the reference to "Article XVII." Article XVII concerns surrender of the premises by the tenant, and mentions nothing about remedies. The only clause of the 59th Avenue lease specifically addressing remedies is Article XVIII, which concerns the landlord's remedies for the tenant's defaults. No specific article of the lease sets out what constitutes a default by the landlord or the tenant's remedies for any default. Thus, section 20.14 makes sense only if it is read to incorporate into the Ogden Avenue lease the landlord's remedies contained in the 59th Avenue lease. The plaintiffs characterize section 20.14 in this way, and Hoyne does not challenge this characterization